IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AXA EQUITABLE LIFE INSURANCE COMPANY, AXA NETWORK, LLC & AXA NETWORK OF TEXAS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD EHRLICH <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:08-CV-01972-MGC |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT
RICHARD EHRLICH'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, TO STAY LITIGATION**

Defendant Richard Ehrlich ("Mr. Ehrlich"), pursuant to this Court's individual practices, section 3(C), submits this reply memorandum in further support of his motion to dismiss or, in the alternative, to stay litigation.

I. PRELIMINARY STATEMENT

Plaintiffs AXA Equitable Life Insurance Company, AXA Network, LLC, and AXA Network of Texas, Inc. (collectively, "AXA") concede, as they must, that their request for a commission refund cannot be finally decided in their favor unless and until they obtain a resolution in their favor in the currently pending matter captioned *AXA Equitable Life Insurance Co. v. Wells Fargo Bank, N.A.*, Civil Action No. 1:07-cv-512-MHS (N.D. Ga.) (the "Rescission Action"). (AXA Opp. at 10.) Indeed, the outcome of the Rescission Action, will determine the threshold question of whether AXA is entitled to seek a refund of the commissions it paid to Mr. Ehrlich for the sale of four life insurance policies (the "Koenig Policies") to Mali and Benzion Koenig (the "Koenigs").

This concession, standing alone demonstrates that this litigation is unripe for resolution and should be dismissed.

In addition, although AXA admits that the terms of field bulletin FB 06-198R require AXA to refund the premiums paid for the Koenig Policies, AXA claims to have done so by transferring a check to Wells Fargo Bank, N.A. ("Wells Fargo"), which Wells Fargo has refused to cash. AXA's argument, however, misrepresents the fundamental nature of a check. Transferring a check does not transfer money unless and until the check is presented and honored by the bank on which it is drawn. Indeed, AXA currently retains possession of the premiums paid for the Koenig Policies—a point that AXA does not, and cannot, dispute. As such, it is axiomatic that a premium refund has not occurred.

Finally, the additional hypothetical arguments that AXA raises and AXA's misrepresentations of Mr. Ehrlich's positions do not overcome Mr. Ehrlich's alternative arguments in favor of a stay of litigation pending the outcome of the Rescission Action. The potential for prejudice arising from the possibility of Mr. Ehrlich being forced to litigate this purely hypothetical dispute that may be entirely mooted by the outcome of the Rescission Action, and the possibility that a judgment may be entered against him when AXA admits it might not be entitled to the relief it seeks, prove the need to stay the litigation.

## II.    ARGUMENT

### A.    AXA's Concession That Its Entitlement To The Relief It Seeks Cannot Be Determined Unless And Until The Rescission Action Has Been Resolved In Its Favor Mandates Dismissal

In response to Mr. Ehrlich's motion to dismiss AXA admits that its entitlement to a commission refund cannot be determined until the Georgia Rescission Action has been

resolved. As AXA notes, if it loses in the Georgia Action, "it will be subject to an order providing that the Policies are valid and in force. Under the Broker Agreement, [Mr.] Ehrlich will then be entitled to commissions in connection with the Policies." (AXA Opp. at 10.) This concession, standing alone, is dispositive of Mr. Ehrlich's motion to dismiss. The fact that AXA's entitlement to the relief it seeks is dependent on the outcome of the Rescission Action renders this litigation unripe for resolution and requires that it be dismissed. *See Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847-48 (1st Cir. 1990) (affirming dismissal of RICO claim as unripe for judicial resolution where the claim for damages was contingent on outcome of other pending litigation). The hypothetical nature of this litigation cannot be overcome by the additional hypothetical concern, also expressed by AXA (AXA Opp. at 13), that Mr. Ehrlich might be unable to pay a judgment if the litigation does not move forward immediately. *See Lincoln House*, 903 F.2d at 847 (where alleged injury was possible inability of Plaintiff to recover from defendant if defendant prevailed in other pending litigation, lawsuit was not ripe for adjudication).

Likewise, although AXA denies it (AXA Opp. at 10-11), this concession underscores the potential for inconsistent outcomes in the Rescission Action and the present action. AXA admits that, if it does not prevail in the Rescission Action, then Mr. Ehrlich will be entitled to retain the commissions that it seeks to have refunded in the present litigation. (*Id.* at 10.) Nevertheless, AXA argues that this litigation should proceed because, if it prevails in this litigation and obtains a commission refund to which it is not entitled, AXA will return the commissions to Mr. Ehrlich.

AXA's position is absurd on its face and wholly contradicts the most fundamental notions of fairness. The only way to avoid the possibility of AXA prevailing in this litigation, but losing the Rescission Action, and thereby obtaining a commission refund that it admits it might not be entitled to, is to wait until the Rescission Action is resolved. For that reason, this matter is unripe for adjudication and AXA can prove no set of facts that would entitle it to relief until the Rescission Action has been resolved. Accordingly, this matter should be dismissed without prejudice.

> B.   AXA Cannot Seek A Commission Refund Because Its Issuance Of A Check To Wells Fargo Did Not Refund The Premiums Paid For The Koenig Policies

AXA relies on field bulletin FB 06-198R as the source of its alleged right to recover a commission refund from Mr. Ehrlich. Field bulletin FB 06-198R provides that, if AXA refunds premiums, then any commissions paid to a Financial Professional in relation to those premiums will be unearned and may be recovered from the Financial Professional personally. (Complaint, Ex. 3 at 2.) Accordingly, a refund of the policy premiums is a condition precedent to recovery under the terms of field bulletin FB 06-198. Moreover, AXA acknowledges that "a refund is accomplished by the physical return of the property in question." (AXA Opp. at 7.) Tendering checks to Wells Fargo did not, however, accomplish the refund of the premiums paid for the Koenig Policies. "A check is an order upon a bank to pay a designated sum of money, which may be voided at any time prior to payment." *In re Grambow*, 35 N.Y.S.2d 1016, 1019 (N.Y. App. Div. 1942); *see also Am. Def. Soc'y v. Sherman Nat'l Bank of N.Y.*, 162 N.Y.S. 1081, 1082 (N.Y. App. Div. 1917) ("It is well settled that a bank check is a mere order upon the bank to pay a sum of money out of the depositor's funds, and that it is subject to

revocation by the drawer at any time before payment[.]"). Since Wells Fargo has not cashed the checks, AXA undeniably retains possession of the premiums paid for the Koenig Policies and retains the power to void the checks it provided to Wells Fargo at any time pending further resolution of the Rescission Action. Accordingly, the required premium refund has not yet occurred.

The cases cited by AXA demonstrate that, if AXA had drafted field bulletin FB 06-198R to require that commissions be refunded when AXA tendered a refund of the policy premiums, then AXA might be able to allege a real controversy between it and Mr. Ehrlich at this time. In each case AXA cites, a tender had occurred regardless of whether that tender was accepted. *See Marino v. Nolan*, 234 N.E.2d 840, 840 (N.Y. 1968) ("[D]efendants properly refused the *tender* of a deed[.]") (emphasis added); *Nat'l Cash Register Co. v. Lyon*, 13 N.Y.S.2d 1, 3 (N.Y. App. Div. 1939) ("Under the common law of this State a seller of goods was permitted to recover the price where due *tender* of performance was made and the buyer refused to take the goods.") (emphasis added); *State v. Branham*, 278 N.Y.S.2d 494, 496 (N.Y. Sup. Ct. 1967) ("[U]pon *tender* of a deed of conveyance. . . the defendant refused to accept the conveyance[.]") (emphasis added). This, however, is not the contractual structure that AXA chose. AXA seeks to have this Court rewrite the terms AXA drafted to produce the absurd result that AXA would be entitled to a commission refund while retaining the very premiums for which the commissions were paid. The structure embodied in field bulletin FB 06-198R expressly avoids this result. AXA should not now be permitted to rewrite its field bulletin in order to create such an absurdity.

Field bulletin FB 06-198R requires that the premiums actually be refunded before AXA is entitled to a commission refund. (*See* Complaint, Ex. 3 at 2.) Since AXA retains the premiums, the premiums have not been returned, the refund has not occurred, and the condition precedent to AXA's right to a premium refund has not occurred.[1] Accordingly, this matter is not ripe for adjudication and AXA cannot prove any set of facts that would entitle it to relief. This litigation should be dismissed without prejudice.

    C.    In The Event That The Court Determines Dismissal Is Inappropriate, These Proceedings Nevertheless Should Be Stayed Pending the Outcome of the Rescission Action

Although this matter currently involves a merely hypothetical set of facts, Mr. Ehrlich acknowledges that there is a possibility that the matter could, one day, ripen into an actual dispute:

> *If* AXA eventually refunds the premiums for the Koenig Policies, then AXA *might* demand that Mr. Ehrlich refund the commissions he received for selling the Koenig Policies. Mr. Ehrlich *might* (or might not) refuse to refund the commissions he received from the sale of the Koenig Policies. If these three contingencies occurred, then a justiciable controversy would probably exist.

(Ehrlich Br. at 11-12 (italics in original).) Accordingly, if the Court determines that a dismissal without prejudice is not appropriate, it should still hold that it is appropriate to stay the litigation and wait to see whether an actual dispute will emerge.

---

[1] Indeed, even if AXA's reading of the field bulletin FB 06-198R were reasonable, AXA's interpretation could only raise an ambiguity in the field bulletin's language. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (explaining that contract language is ambiguous when it is capable of multiple meanings when objectively viewed by a reasonably intelligent person who has examined the context of the entire agreement and is cognizant of the customs, practices, usages and termination as generally understood in the particular trade or business.); *Chimart Assocs. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986) ("The initial question . . . is whether the agreement on its face is reasonable susceptible of more than one interpretation."). Any such ambiguity would be of no assistance to AXA in this case because, under New York law, the doctrine of *contra proferentem* would require that such ambiguities be resolved against the drafter, which was AXA. *See 151 W. Assocs. v. Printsiples Fabric Corp.*, 460 N.E.2d 1344, 1345 (N.Y. 1984) ("It has long been the rule that ambiguities in a contractual instrument will be resolved *contra proferentem*, against the party who prepared or presented it.").

...

The following factors should be considered when the court determines whether to grant a stay of litigation:

> "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."

*Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). As discussed in Mr. Ehrlich's opening brief, these factors favor a stay in the litigation. (Ehrlich Br. at 13-15.)

As to the first factor, AXA argues that its ability to recover commissions from Mr. Ehrlich may be prejudiced by a stay in this action. This, however, is merely another hypothetical assertion that is not sufficient to justify the immediate continuation of this litigation. *See Lincoln House*, 903 F.2d at 847 (fact that plaintiff feared defendant's possible inability to pay a judgment was not enough to avoid conclusion that the case was unripe).

Similarly, although AXA disingenuously misquotes the language in which Mr. Ehrlich explains the contingencies that must occur before an actual controversy will exist in order to suggest that Mr. Ehrlich intends to relitigate the issues raised in the Rescission Action (AXA Opp. at 3, 14.), Mr. Ehrlich's position is, as was stated in his opening brief, that the Rescission Action will resolve the threshold question of whether the premiums will be refunded. (*See* Ehrlich Br. at 2, 11, 14.) It is AXA that has sought to introduce the issues of the Rescission Action into this matter by relying on the depositions taken of the Koenigs in connection with the Rescission Action. (AXA Opp. at 4-5.) The possibility that the Koenig's may not be available to give testimony in this

action is irrelevant to the question of whether this litigation should be stayed because the Koenigs' testimony is irrelevant to the transaction between AXA and Mr. Ehrlich. Indeed, even if the Koenigs did have information relevant to the issues raised by AXA's complaint against Mr. Ehrlich, the Federal Rules of Civil Procedure provide for the taking of depositions in order to perpetuate testimony. *See* Fed. R. Civ. P. 27. Use of this procedure would obviate any concerns about the impact that the advanced age of the Koenigs might have on their ability to provide testimony. Accordingly, AXA would suffer no prejudice if this matter is stayed pending the outcome of the Rescission Action.

Mr. Ehrlich, on the other hand, may suffer the ultimate prejudice of entry of judgment against him, compelling him to return his commissions, if this litigation proceeds. Here, that judgment would be entered under circumstances where AXA has admitted that it may not be entitled to the relief it seeks. (AXA Opp. at 10) (admitting that Mr. Ehrlich will be entitled to commissions in connection with the Koenig Policies if AXA does not prevail in the Rescission Action). Moreover, Mr. Ehrlich, an individual, will be forced to incur significant defense costs to litigate a dispute over a purely hypothetical set of facts. Indeed, if the Rescission Action is not resolved in AXA's favor, then there will be no need for this litigation to proceed at all. Accordingly, AXA's argument that Mr. Ehrlich faces no prejudice is simply nonsensical.

Likewise, the third and fifth factors also support Mr. Ehrlich's request for a stay of this litigation. This Court, as AXA admits, cannot determine whether AXA is entitled to a commission refund until the Rescission Action has been resolved. (*See id.*) The outcome of the Rescission Action may make this litigation entirely unnecessary.

Accordingly, the interests of judicial economy and the just and efficient resolution of disputes are best served by a stay of the present litigation.

The fourth and final factor also does not favor immediate litigation of this matter. Although AXA claims that the burden on the memories of potential third-party witnesses will be increased by a stay of this litigation, it ignores the fact that the testimony of these witnesses will not be required at all if AXA loses in the Rescission Action. Accordingly, the fourth and final factor of the analysis also favors a stay.

Indeed, the fact that this entire litigation may become wholly unnecessary if AXA does not prevail in the Rescission Action strongly indicates that this action should be stayed. *See TM Park Ave. Assocs. v. W.E.A. Assocs.*, 214 F.3d 344, 349-50 (2d Cir. 2000) (ordering the district court not to rule on pending litigation where pending state court litigation would likely moot the federal case).

Likewise, although AXA relies on the state court's opinion denying a stay of litigation in *AXA Equitable Life Insurance Co. et al. v. Epstein*, Index No. 107292/07 (N.Y. Sup. Ct. Jan. 29, 2008), this order is not on point. First, it does not appear that the New York state court was presented with or considered the ripeness arguments that are at the center of both Mr. Ehrlich's request to dismiss this litigation and his request to stay the litigation pending the outcome of the Rescission Action. Additionally, the court does not appear to have been presented with or considered the potential mootness implications of AXA's possible loss in the Rescission Action. Moreover, as the state court noted, Mr. Epstein has raised counterclaims for discrimination that do not presently exist in this case. (AXA Opp., Ex. F at 5.)

Accordingly, AXA has failed to refute Mr. Ehrlich's arguments in support of his request that the Court stay this litigation pending the outcome of the Rescission Action.

### III. CONCLUSION

For the foregoing reasons, and those stated in Mr. Ehrlich's memorandum in support of his motion to dismiss or, in the alternative, to stay litigation, Mr. Ehrlich respectfully requests that this Court dismiss this litigation without prejudice or, alternatively, stay the litigation pending the outcome of the Rescission Action.

Dated: June 24, 2008                              Respectfully submitted,

                                                  _____/s/_____
                                                  David Gourevitch (Bar No. DG 8795)
                                                  Law Office Of David Gourevitch, P.C.
                                                  150 East 58th Street, 34th Floor
                                                  New York, NY 10155
                                                  Telephone: (212) 355-1300
                                                  Facsimile: (212) 317-2946
                                                  david@gourevitchlaw.com

Of Counsel:

Thomas J. Judge
M. David Maloney
Thompson, Loss & Judge, LLP
Two Lafayette Centre
1133 21st Street, N.W.
Suite 450
Washington, D.C. 20036
Telephone: (202) 778-4060
Facsimile: (202) 778-4099

                                                  *Counsel for Defendant Richard Erhlich*